IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IRVIN G. MURRAY,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 25-CV-5808** |
| | : | |
| **U.S. TREASURY,** *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**MARSTON, J.**                                                                                          **November 24, 2025**

Plaintiff Irvin G. Murray initiated this civil action by filing a pro se Complaint against the U.S. Treasury ("Treasury"); the U.S. Department of Housing and Urban Development ("HUD"); the Philadelphia Housing Authority ("PHA"); the Department of Human Services ("DHS"); the Southeastern Pennsylvania Transportation Authority ("SEPTA");[1] the "U.S Treasury Mexico LLC-HUD;" "FHA;" "OSH;"[2] Poor People's Army; Alec Incorp.; Former U.S. Senator Rick Santorum; Philadelphia City Councilmembers Kendra Brooks and Jamie Gaultier;[3] Pennsylvania State Representative Amen Brown; Philadelphia District Attorney Larry Krasner; Dowan Harris; Sterling Johnson; Cheri Honkala; James Lafayette; and Renee Williams. For the following

---

[1] Murray used abbreviations for Defendants HUD, PHA, DHA, and SEPTA. The Court identifies these agencies based on commonly abbreviated references.

[2] Murray does not state any allegations identifying "OSH" or describing its involvement. The Court construes "OSH" to be either the Occupational Safety and Health Administration ("OSHA") or the Occupational Safety and Health Act, but is unable to discern any viable claim against OSHA, or pursuant to the Act.

[3] Murray names a "Janie" Gaultier as a member of the City Council. According to the Philadelphia City Council website, her first name is Jamie. *See* https://phlcouncil.com/jamiegauthier/ (last viewed Nov. 19, 2025). The Court may consider matters of public record when conducting a screening under § 1915. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court will use the spelling of this Defendant's name that is contained in public records.

reasons, the Court will grant Murray leave to proceed *in forma pauperis* and dismiss the Complaint in its entirety.

I.  **FACTUAL ALLEGATIONS**[4]

The majority of Murray's allegations are difficult to understand or are completely incomprehensible, containing numerous fragmented claims regarding non-party individuals, and failing to set forth allegations regarding most of the named Defendants. At base, Murray's claims appear to stem from an inheritance allegedly stolen by Defendants DHS, Philadelphia City Councilmembers Brooks and Gaultier, Former U.S. Senator Santorum, Cheri Honkala, the Poor People's Army, HUD, and a non-defendant named Sherry Huntler. (Doc. No. 2 at 2.) Specifically, Murray alleges he is the "sole heir to Irvin Singleton Johnson's 1987 FHA Judgment" in the amount of 43 million dollars. (*Id.*) He claims his father passed the inheritance "straight" to him "for reparations to black and brown Philly." (*Id.*) He next claims the DHS estate recovery office in Harrisburg flagged the inheritance as "threat money" and "swallowed it under Medicaid offsets, even though it wasn't Medicaid cash." (*Id.* at 2–3.) Murray alleges Defendants Honkala, Councilmembers Brooks and Gaultier, "plus the so-called Poor People's Army," including other individuals not named as defendants, "laundered the rest." (*Id.*) Senator Santorum was allegedly a congressman at the time these events occurred and "sat on the appropriations [committee] that year." (*Id.* at 3.) Murray then continues to list several non-party individuals and entities that he appears to believe may be involved with or have documents related to his allegedly stolen inheritance. (*Id.* at 3–5.) He also claims he has received death

---

[4] Murray submitted a seven-page handwritten Complaint. (Doc. No. 2.) The factual allegations set forth in this Memorandum are taken from that Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors are cleaned up.

threats and is "being denied housing, threatened, harassed, attacked, blackballed, and erased because [he is] reclaiming" the 43 million dollars "in reparations funds." (*Id.* at 6.)

As relief, Murray appears to request bank transfer, routing information, and other documents pursuant to the Freedom of Information Act ("FOIA") from several state agencies and private institutions and individuals[5] so he can recover his claimed inheritance "before Cheri Honkala buries it again." (*Id*. at 4–5.) He requests that his inheritance be returned to him (*id.* at 7) and that his case be "escalat[ed]" to the FBI (*id*. at 2).[6] He also requests money damages and restoration of his housing rights, listing an address of 5138 Reno Street, but providing no city, state, or zip code. (*Id*.)

## II.   STANDARD OF REVIEW

The Court will grant Murray leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C.

---

[5] Congress enacted FOIA to "facilitate public access to Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted). FOIA requires *federal agencies* to disclose, upon request, broad classes of agency records unless those records are covered by the statute's exemptions. *See* 5 U.S.C. § 552(a)(3)(A), (b) (describing agencies' obligations, procedures to be followed when seeking information under the Act, and exemptions). Any claims under the FOIA fail for lack of a legal basis because that statute does not apply to state agencies or private entities/individuals. *See* 5 U.S.C. § 551(1) (defining "agency" for purposes of FOIA as certain authorities of the United States).

[6] In this vein, Murray requests that those involved, presumably the named Defendants, be criminally prosecuted and sentenced to life in prison. But the Court cannot provide this relief because a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Bliss v. Lehigh Cnty. Parole*, No. 25-cv-4808, 2025 WL 3028168, at *2 (E.D. Pa. Oct. 29, 2025) (citing *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.")); *Smith v. Friel*, No. 19-cv-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

§ 1915(e)(2)(B)(i) applies, requiring the Court to dismiss the Complaint if it is frivolous. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . ." *Id.* at 327. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Additionally, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court accepts the facts alleged in the Complaint as true, draws all reasonable inferences in Murray's favor, and asks only whether that Complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Murray is proceeding *pro se*, the Court construes his allegations

liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).

## III.   DISCUSSION

The exact nature of Murray's claims is unclear. Since he references various local, state and federal government officials and agencies, and appears to allege his civil rights were violated, the Court understands him to be asserting constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.

As an initial matter, Murray may not proceed on his claims because his allegations, to the extent decipherable, lack a basis in fact and are frivolous. The Court has thoroughly reviewed Murray's Complaint and cannot discern any plausible basis for a non-frivolous claim upon which he could move forward. Murray appears to assert that various government officials and agencies, as well as private entities and individuals, conspired to steal his purported $43 million inheritance and attempted to murder him because of that inheritance. Specifically, he claims he has received death threats and is "being denied housing, threatened, harassed, attacked, blackballed, and erased because [he is] reclaiming" the $43 million "in reparations funds." (Doc. No. 2 at 6.) He asserts "they," presumably Defendants, "don't get to kill [him] for an inheritance." (*Id*.) These allegations are wholly incredulous. Accordingly, the Court will dismiss Murray's claims, without leave to amend, as factually baseless.[7] *See, e.g.*, *Caterbone v.*

---

[7] Although it appears Murray's claims under FOIA relate only to the state agencies or private entities/individuals he listed in his Complaint, which fail for the reasons discussed *supra* n.5, to the extent Murray intended to include the federal agency defendants, the Court also cannot discern any plausible basis for a non-frivolous FOIA claim upon which he could move forward. *See Rhodes v. Fed. Bureau of Investigation*, No. 16-cv-93, 2017 WL 1021314, at *4 (N.D. Ind. Mar. 16, 2017) ("[T]he remainder of Rhodes' complaint, which references unspecified actions allegedly taken by unidentified FBI agents

*Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (dismissing appeal as lacking an arguable basis in fact where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Harley v. City of Phila. City Gov't*, No. 21-3680, 2021 WL 4844156, at *2 (E.D. Pa. Oct. 18, 2021) (dismissing as frivolous Harley's claims based on "a conspiracy by Defendants to target her with wiring, voices, and electrical activity, and to murder her"); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior").

Even if Murray's allegations were not factually frivolous, which the Court concludes they are, his claims also do not have any basis in any plausible constitutional violation[8] for the additional reasons as set forth below.

### A.     Claims Against DHS

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100

---

related to harassment, torture (using 'directed energy weapons'), theft, destruction of property, defamation, civil rights violations, attempted murder ('by forced suicide'), and misconduct, suggests that any FOIA claims regarding these allegations are frivolous because 'the facts alleged rise to the level of the irrational or wholly incredible.'").

[8] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

(1984); *see also A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). DHS is a state agency immune from suit and is not a "person" subject to liability under § 1983. *See, e.g.*, *Betts v. New Castle Youth Dev. Ctr.*, 621 F. 3d 249, 253 (3d Cir. 2010) ("State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment."); *Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018) (noting that "'[s]tates or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes' are not 'persons' under § 1983") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)); *Sherle v. Pa. Dep't of Hum. Servs.*, No. 21-cv-140, 2022 WL 17469468, at *2 (W.D. Pa. Dec. 6, 2022) (dismissing § 1983 claim against DHS as barred by the Eleventh Amendment). Because DHS is immune from liability under § 1983, this claim will be dismissed.

B.  **Claims Against PHA and SEPTA**

As a public housing authority, PHA is considered a municipal corporation for the purposes of § 1983. *See Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009) (citing *Wright v. Phila. Hous. Auth.*, No. 94-cv-1601, 1994 WL 597716, at *3 (E.D. Pa. Nov. 1, 1994)). SEPTA is also treated as a municipality for purposes of claims brought under § 1983. *See Brown v. SEPTA*, 539 F. App'x 25, 27 (3d Cir. 2013); *see also Thompson v. Se. Pa. Transp. Auth.*, No. 20-cv-756, 2021 WL 2414610, at *3 (E.D. Pa. June 14, 2021), *aff'd*, No. 21-cv-2286, 2022 WL 17958629 (3d Cir. Dec. 27, 2022). Municipal defendants, such as PHA and SEPTA, are not liable under § 1983 unless a municipal policy or custom caused the alleged constitutional violation. *See Lee v. Petrolichio*, 697 F. App'x 112, 113 n.5 (3d Cir. 2017) (concluding that the PHA was not a proper defendant in § 1983 action where plaintiff "did not allege an 'official policy or custom.'"). Besides naming PHA and SEPTA as defendants, Murray asserts no allegations about the PHA or SEPTA's involvement in the alleged wrongs or that those wrongs

were the result of a PHA or SEPTA policy or custom.  Murray has thus not stated a plausible § 1983 claim against PHA or SEPTA.  *See McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was.").  Given the frivolity of his underlying allegations, no leave to amend will be granted as to these Defendants.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112–13 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile.").

### C. Claims Against U.S. Treasury and HUD

Murray names the U.S. Treasury[9] and HUD as defendants.  He has not alleged any legal basis for a claim against the U.S. Treasury or HUD to recover money damages.  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Since there is no waiver of immunity for an individual to pursue damages claims against the U.S. Treasury or HUD for alleged constitutional violations, Murray's claim may not proceed.  *See Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities.").

### D. Fair Housing Act Claims

Murray also asserts he is "being denied housing" because of his alleged inheritance and requests restoration of his housing rights, listing an address of 5138 Reno Street.[10]  (Doc. No. 2

---

[9] The Court is unable to discern the meaning of Murray's reference to the defendant named "U.S Treasury Mexico, LLC-HUD" and treats it as duplicative of the U.S. Treasury.

[10] Plaintiff filed an emergency motion after filing his Complaint, requesting the Court to immediately restore his housing voucher, which the Court denied for the reasons set forth in its Order filed on October 24, 2025.  (*See* Doc. No. 7.)  Plaintiff subsequently filed a combined motion to

at 6–7.)  It is possible that Murray intended to assert a Fair Housing Act ("FHA")[11] retaliation claim based on allegations that he was terminated from a housing assistance program in retaliation for attempting to recover his alleged stolen inheritance.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.").

      The FHA "prohibits housing discrimination on the basis of, inter alia, race, gender, and national origin."  *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 283 (3d Cir. 2020); *see also* 42 U.S.C. § 3604(b).  The Fair Housing Amendments Act ("FHAA"), which was adopted by Congress in 1988, extended FHA protections to individuals with disabilities.  *Id*.; *see also* 42 U.S.C. § 3604(f).  The FHA's anti-retaliation provision makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title."  42 U.S.C. § 3617.  The regulations associated with § 3617

---

reconsider and appeal, attaching a letter dated November 16, 2021, from Councilmember Brooks congratulating him for securing housing at this same address, 5138 Reno Street located in Philadelphia.  (*See* Doc. No. 11 at 11.)  Murray also attached a document that appears to be from the City of Philadelphia Office of Homeless Services on which he wrote in black ink that this document was given to him "on the day of eviction" from the Reno address on August 25, 2025.  (*Id*. at 12.)  It appears he may be attempting to challenge a state court eviction from the Reno address.  This Court is barred from intervening in such an action.  Courts in the Third Circuit have consistently held that "[t]he Anti-Injunction Act precludes a federal court from enjoining state court eviction or foreclosure proceedings." *McMillan v. Nationstar Mortg. Co*., No. 20-1321, 2020 WL 4201605, at *2 (E.D. Pa. July 22, 2020) (collecting cases); *Frankel v. Guzman*, No. 20-5208, 2020 WL 6161512, at *2 (E.D. Pa. Oct. 21, 2020) (rejecting emergency request to enjoin eviction proceedings and noting weight of authority in Third Circuit to support holding); *Rhett v. Div. of Hous., Dep't of Cmty. Affairs*, No. 14-5055, 2014 WL 7051787, at *3 (D.N.J. Dec. 12, 2014) ("[T]o the extent Plaintiff requests that this Court dismiss the eviction proceedings or order them transferred to this Court, the Anti–Injunction Act prohibits this Court from taking such action."); *Frankel v. Kessler*, No. 21-cv-93, 2021 WL 229321, at *5 (E.D. Pa. Jan. 22, 2021) (dismissing complaint on screening and denying temporary restraining order where claims related to state court eviction proceeding were barred by Anti-Injunction Act).

      [11] He names "FHA" as a defendant without clarifying the referenced abbreviation.  The Court construes his reference to the FHA as an intent to state a claim under the Federal Housing Act given the allegations related to his housing rights.

make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons") (emphasis added). Prohibited acts under § 3617 include retaliating against individuals who report discriminatory housing practices or participate in an FHA proceeding. *See* 42 U.S.C. § 3617; 24 C.F.R. § 100.400(c). "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) []he engaged in a protected activity; (2) the defendant subjected [him] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017).

The FHA is a federal anti-discrimination statute intended to address discriminatory housing practices targeting members of specific protected classes. *See Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011) ("The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class."). Murray does not allege that he was discriminated against because he was a member of a protected class. This is fatal to any FHA claim, including any FHA retaliation claim. *See, e.g.*, *Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020) (dismissing FHA interference and retaliation claims on screening where plaintiff does not link alleged harassment to "[his] exercise or enjoyment of a right under the FHA" and does not allege a protected activity involving complaints about discrimination). Because Murray's claims are predicated solely on allegations surrounding retaliation for his alleged inheritance, not discrimination based on a protected class, this claim will be dismissed with prejudice as amendment would be futile.

### E. Claims Against Former U.S. Senator Rick Santorum

Murray names former U.S. Senator Santorum as a defendant, claiming that he "sat on the appropriations [committee] that year" and was a congressman when his alleged inheritance was purportedly stolen. (Doc. No. 1 at 3.) The Court understands Murray to be attempting to assert a *Bivens* claim[12] against Senator Santorum based on his involvement on the House Committee of Appropriations when he was a member of the U.S. House of Representatives. However, these claims are time-barred. According to public records, Senator Santorum was a member of the U.S. House of Representative from January 3, 1991, to January 3, 1995, and was later elected to the United States Senate. *See* https://history.house.gov/People/Listing/S/SANTORUM,-Richard-John-(Rick)-(S000059)/ (last viewed Nov. 19, 2025). Like constitutional claims against state officials brought pursuant to 42 U.S.C. § 1983, there is no specific statute of limitations for *Bivens* claims; rather, also like claims brought under § 1983, the timeliness of a *Bivens* claim is governed by Pennsylvania's two-year statute of limitations for personal injury torts. *See Kornafel v. United States Postal Serv.*, 784 F. App'x 842, 843 (3d Cir. 2019) (citing *Kach v. Hose,* 589 F.3d 626, 634 (3d Cir. 2009)). Because Senator Santorum has not been a congressman in more than 20 years, any claims arising out of conduct that took place during that timeframe are well beyond the statute of limitations and untimely on the face of the Complaint. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal

---

[12] The basis for asserting a constitutional claim against a federal official is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (stating that the "purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability).

for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint.").

  F.  **Claims Against Private Individuals and Entities**

Murray names Cheri Honkala, Dowan Harris, Sterling Johnson, James Lafayette, Renee Williams, Alec Incorp., and the Poor People's Army as defendants (*see* Doc. No. 1 at 2.), all of whom appear to be private individuals and entities rather than "state actors" subject to liability under § 1983 for constitutional violations. Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Additionally, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The Complaint does not allege any facts pertaining to the conduct of these private individuals

and entities that would indicate they were state actors under the three tests outlined by the Third Circuit. Indeed, other than the allegations against Cheri Honkala and the Poor People's Army for allegedly participating in stealing his inheritance, Murray does not assert *any* facts related to these individuals and entities nor does he allege how they violated his civil rights. Accordingly, the claims against Honkala, Harris, Johnson, Lafayette, Williams, Alec Incorp., and the Poor People's Army will be dismissed.

### G.   Claims Against District Attorney Krasner and Representative Brown

Murray names District Attorney Krasner and Representative Brown as defendants but makes no allegations about how they were involved in the incidents he describes. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Jutrowski v. Towship of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207). *See also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Other than naming District Attorney Krasner and Representative Brown as defendants, Murray does not allege any facts as to how these individuals violated his civil rights and thus, he fails to assert the personal

involvement required to state a plausible claim against them. Accordingly, the claims against District Attorney Krasner and Representative Brown will be dismissed.

### H.     Claims Against Philadelphia City Councilmembers Brooks and Gaultier

Lastly, Murray brings claims against Philadelphia Councilmembers Brooks and Gaultier. He claims that after DHS flagged the inheritance as "threat money" and "swallowed it under Medicaid offsets," Councilmembers Brooks and Gaultier along with others "laundered the rest." (Doc. No. 1 at 2–3.) Accordingly, the Court interprets this claim as asserting a Fourth Amendment violation pursuant to § 1983. Under the Fourteenth Amendment, Murray is entitled to due process of law before the government can deprive him of his "life, liberty, or property." U.S. Const. amend. XIV, § 1, cl. 3. Nonetheless, an individual may not assert a claim under § 1983 or the Fourteenth Amendment for even an intentional deprivation of the individual's property by a government employee "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process). Pennsylvania law provides Murray with an adequate state remedy—the Pennsylvania Tort Claims Act—for the alleged loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013); *see also Shakur v. Coelho*, 421 F. App' x 132, 135 (3d Cir. 2011) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, any Fourteenth Amendment due process claims will be dismissed.[13]

---

[13] Because the Court has dismissed Murray's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any remaining state law claims he intended to pursue against Councilmembers Brooks and Gaultier. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity

IV.     **CONCLUSION**

For the foregoing reasons, the Court will grant Murray leave to proceed *in forma pauperis* and dismiss the Complaint as factually frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).[14] All federal claims will be dismissed with prejudice and leave to amend will not be given as the Court concludes that any attempt to amend would be futile. *See Grayson*, 293 F.3d at 108, 110. Any state law claims Murray intended to bring will be dismissed without prejudice for lack of subject matter jurisdiction. An appropriate order follows.

---

between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 10 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Murray alleges he is a resident of Pennsylvania. Although he does not allege an address for Councilmembers Brooks and Gaultier, their positions on the Philadelphia City Council suggests they are Pennsylvania citizens. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

[14] Murray also filed a motion to appoint counsel (*see* Doc. No. 8), which will be denied since his claims did not pass statutory screening. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). Murray also filed a Motion for Reconsideration and Appeal of his Emergency Injunction (Doc. No. 11), and an Emergency Motion for Entry of Default and Default of Judgment based on Defendants' failure to respond to the Complaint (Doc. No. 15). Because this case will be dismissed with prejudice at the statutory screening stage and not proceed to the service stage, these motions will be denied as moot.